ALPER BLOUSE COMPANY, INC., Appellant, v. E. E. CONNOR & CO., INC., Respondent.

MEMORANDUM BY THE COURT. On a review of the whole evidence in a case in which close issues of fact were presented depending upon the credibility of witnesses, we think we should not say that the jury's verdict in defendant's favor is against the weight of the evidence or that there is any other basis for setting the verdict aside. The testimony offered by the defendant-seller included testimony by experts that the goods involved (the refinished goods), were fit for the purposes for which they were made, i.e., cutting by machine for manufacturing blouses. This plus the other evidence in the case would make the issue of breach of warranty entirely a question for the jury, and under the circumstances, we should not disturb the verdict in defendant's favor.

The judgment appealed from should be affirmed, with costs to defendant-respondent.

COHN, J. (dissenting). When this case was here in June, 1953 (282 App. Div. 123), this court in reversing a nonsuit in favor of defendant summarized the testimony as follows (p. 124): "Defendant, upon examination of the goods, apparently conceded the defective condition, and told plaintiff to return them to the finisher. It agreed to send a sample of the goods after refinishing for the purpose of examination by plaintiff. Such a sample was sent, and plaintiff again complained of similar defects in the goods. The defendant once more agreed to refinish them, and promised to send a second sample of .the goods after the second finishing. On receipt of this second sample plaintiff complained that examination disclosed that the tendency to curl had not been removed, and that the goods were still defective. Defendant refused further consideration of plaintiff's claims and reshipped the bulk of the goods to plaintiff, but plaintiff refused to accept the same."

The court also said (pp. 124-125): " The evidence disclosed that the second sample sent to plaintiff was for the purpose of showing the condition of the bulk of the goods after the second refinishing. In fact, defendant in its answer admitted that it had caused all of the goods to be refinished in accordance with the second sample. We think that this admission, plus proof of the condition of the second sample, if it showed unfitness for the buyer's purpose, established a prima facie case."

From the evidence adduced upon this trial, it again appears that although plaintiff paid $7,654.50 for goods delivered to it by defendant, such goods were unsatisfactory and unsuitable for the purpose for which they were to be used, that is: to manufacture blouses. Plaintiff was then entitled to a return of the payment made for the goods. Thereafter defendant agreed to finish another piece of goods and submit a sample for plaintiff's approval. The first sample

of refinished goods was again found unsatisfactory by plaintiff. Defendant then sent a second sample. Concededly, this sample was never approved by plaintiff for it found such sample equally unsatisfactory and so advised defendant. Upon being informed that the second sample was unsatisfactory defendant's president agreed to contact plaintiff concerning it. Without any further negotiations, however, defendant's president ordered the firm's dyers to finish and ship the bulk of the goods. He did not at any time inspect the second sample as he had agreed he would.

It was incumbent on defendant to furnish satisfactory proof that the second sample did not in fact curl; that it was usable for the purpose ordered; that, absent plaintiff's approval of the second sample, it had notified plaintiff that such refinished goods were tested and found similar to the second sample and that they were suitable for manufacture of blouses. All this defendant failed to do. In the circumstances, plaintiff was justified in refusing to accept the goods when delivered a second time. The trial judge, who quite properly declined to discharge the jury when it first reported that there could be no agreement, expressed vehement disapproval with the jury's verdict as finally rendered, but declined to interfere with it.

The verdict is contrary to the weight of the credible evidence, and should be set aside, and a new trial ordered.

BASTOW, J. (dissenting). In my opinion, the judgment appealed from should be reversed and a new trial ordered. A narrow and close issue of fact was presented to the jury. Under normal circumstances it might well be said that the verdict was conclusive. Here, however, there were abnormal circumstances that entitle the plaintiff to a new trial. Upon a previous trial, the jury disagreed.

The jury in this case retired to deliberate at two-forty in the afternoon. Two hours later they returned for further instructions. At six o'clock the jury reported that they were unable to agree. The Trial Justice refused to accept this report and spoke at some length. It is apparent that the court had the best intentions in trying to bring this case to an end but the result was that the jury retired and in eleven minutes returned a ten to two verdict in favor of the defendant.

The Trial Justice, after telling the jury that he would not accept the report of disagreement, directed them to return to their jury room and said "you will stay here pretty late, I can assure you". The issues of the case were briefly reviewed for the jury and they were again told that "you will go to dinner, and you will come back say at 7:30 and then you will resume your deliberations and when the Court is satisfied that you have given this case the consideration that it requires and not until then will I entertain a decision from you that you cannot agree." The court then reversed its former decision to send the jury to dinner and gave them the opportunity to go back and deliberate before going to dinner. The remarks were concluded with the information that if the jury went to dinner, it would be at their own expense because the county had made no provision to pay for dinners.

The jury, as heretofore stated, returned in eleven minutes with a verdict for the defendant. The court was obviously shocked. It said, among other things, "I disagree with the verdict. I don't see how you could have reached that verdict". The following morning, in an unusual proceeding, the court reassembled the jury and before discharging them stated that counsel for the plaintiff might speak with the members of the jury. The jury was told that

"If any of you feel that by reason of the fact that the Court indicated that you might be here late and at great personal sacrifice to yourself you felt you had no alternative except to make a decision which was contrary to the dictates of your consciences then you can do whatever you want with respect to making any statement to counsel in that connection and that will be all right with me because the main thing we are doing is to search justice."

Thereafter, affidavits were obtained from several jurors. It appears therefrom that when a disagreement was reported they stood seven to five in favor of a verdict for the plaintiff. During the eleven minutes they were in retirement, five, who had previously voted for the plaintiff, changed and voted for the defendant so that they could get home and would not be kept late. One juror stated that "When the Court told us at 6 P.M. that it was going to send us out for dinner and that we were to come back and deliberate for the rest of the evening, we went back to the jury room and several of the other jurors stated that they did not wish to be tied up any longer and that they were changing their votes, which would have given the plaintiff 3 votes and the defendant 9 votes. At that time I changed my mind." The plaintiff upon these affidavits made a motion for a new trial. It was denied and we affirmed, stating that "The merits of the controversy, whether the verdict was against the weight of the evidence or whether there was any other basis for setting the verdict aside, may be determined upon an appeal from the judgment." (283 App. Div. 706.)

It is a well-recognized rule that affidavits of jurors will not be received to impeach their verdict but there are exceptions to this rule. (See *Schruder* v. *Joseph H. Gertner, Jr., Inc.,* 282 App. Div. 1064, and *Wilkins* v. *Abbey,* 168 Misc. 416.) Here, because of the well-intended but unfortunate remarks of the trial court, the jury took the easy way out and to avoid buying their dinners and being kept late in the evening, produced a verdict. The plaintiff, in effect, was deprived of his day in court. (See *Green* v. *Telfair,* 11 How. Prac. 260.)

The judgment should be reversed and a new trial granted.

Dore, J. P., Callahan and Botein, JJ., concur in Memorandum by the Court; Cohn and Bastow, JJ., dissent and vote to reverse and grant a new trial in separate opinions.

Judgment affirmed, with costs to the respondent.