Alper Blouse Company, Inc., Appellant, *v.* E. E. Connor & Co., Inc., Respondent.

Argued April 14, 1955; decided July 8, 1955.

*Myron Kommel* for appellant.  I. Plaintiff was deprived of its day in court.  (*People* v. *Faber,* 199 N. Y. 256; *Wilkins* v. *Abbey,* 168 Misc. 416; *McCarthy* v. *Odell,* 202 App. Div. 784; *Green* v. *Telfair,* 11 How. Prac. 260.)  II. Jurors' affidavits may properly be considered.  (*Schrader* v. *Joseph H. Gertner, Jr., Inc.,* 282 App. Div. 1064.)  III. There is no competent evidence to sustain the verdict.  IV. The court erroneously charged as to what the issue was.  V. The blouse was improperly admitted into evidence.  VI. There is more than sufficient doubt about this verdict to warrant a new trial.

*William H. West, Jr.,* for respondent.  I. The remarks of the trial judge, in his charge and instructions to the jury prior to verdict, were not in any way coercive.  (*Green* v. *Telfair,* 11 How. Prac. 260; *Conners* v. *Walsh,* 131 N. Y. 590; *White* v. *Calder,* 35 N. Y. 183; *People* v. *Faber,* 199 N. Y. 256; *McCarthy* v. *Odell,* 202 App. Div. 784; *People* v. *Sheldon,* 156 N. Y. 268.)  II. Affidavits and statements of jurors in this case may not be used to impeach their verdict.  (*People* v. *Sweetland,* 298 N. Y. 899; *People* v. *Sprague,* 217 N. Y. 373; *Jackson* v. *S. & D. Motor*

*Lines,* 272 App. Div. 990; *Davis* v. *Lorenzo's, Inc.,* 258 App. Div. 933; *Payne* v. *Burke,* 236 App. Div. 527, 262 N. Y. 630; *Wilkins* v. *Abbey,* 168 Misc. 416; *Williams* v. *Montgomery,* 60 N. Y. 648; *Schrader* v. *Joseph H. Gertner, Jr., Inc.,* 282 App. Div. 1064.) III. The manner in which the jurors' affidavits were obtained in this case should preclude their use, regardless of any question of competency. IV. Plaintiff-appellant's failure to note an exception to the portion of the charge now complained of precludes its review at this time. (*Thomas* v. *First Nat. Bank of Lisbon,* 263 App. Div. 476.) V. The facts of this case have been found by a jury, whose verdict was affirmed by the Appellate Division below, and they cannot be reviewed by this court. (*Fritz* v. *Tompkins,* 168 N. Y. 524; *Wellisch* v. *John Hancock Mut. Life Ins. Co.,* 293 N. Y. 178; *Frankenberger* v. *Schneller,* 258 N. Y. 270; *Metzroth* v. *City of New York,* 241 N. Y. 470; *City of New York* v. *Wilson & Co.,* 278 N. Y. 86.) VI. The court correctly charged the jury as to the issues. (*Alper Blouse Co.* v. *Connor & Co.,* 282 App. Div. 123; *Owen* v. *Rochester-Penfield Bus Co.,* 304 N. Y. 457.) VII. The blouse was properly admitted into evidence. VIII. There is no doubt about the verdict herein which warrants a new trial.

FULD, J. This action was brought by Alper Blouse Company to recover the purchase price paid to E. E. Connor & Co. for some nylon cloth, which plaintiff refused to accept because of its allegedly defective quality. Although the case has been twice tried, this is the first time it has been before this court. The first trial ended at the conclusion of plaintiff's case upon defendant's motion for a nonsuit; the Appellate Division, however, reversed and directed a new trial on the ground that plaintiff had made out a prima facie case. The second trial resulted in a verdict for defendant and the ensuing judgment has been affirmed, by a three to two vote, in the Appellate Division. It is our view that there must be a new trial for the reason that there is a lack of evidence to support the verdict in defendant's favor.

In January of 1951, Alper ordered from Connor some 5,000 yards of certain goods, described as nylon tricot, for use in the manufacture of blouses, paying, at the agreed price of $1.50 a yard, a total of $7,654.50. The buyer received the goods and dis-

covered, when it started to cut them preparatory to manufacture, that they " curled instead of lying flat." This defect, it was established, rendered the material unsuitable for use in the large-scale manufacture of blouses, since it seriously increased the difficulty and costliness of the cutting and sewing operations. The seller, recognizing the defective condition of the material, advised Alper to return the goods to the seller's dyer and finisher and agreed that it would send Alper a second sample subject to its approval. The purchaser returned the goods and sometime thereafter received the second sample. That sample was, concededly, never approved; Alper found it unsatisfactory and so advised Connor. Although Connor's president counseled patience and said that he would later contact Alper, he did nothing, except that, some weeks later, he telephoned to insist that the second sample was " good," that all of the merchandise had been refinished in accordance with that sample and that it was being shipped to Alper. The latter, however, refused to accept the refinished material and commenced this suit to recover its purchase price.

It is undisputed that the goods, when first delivered, were unsatisfactory and quite unsuitable for the mass production of blouses, the purpose for which, it was known, they were to be used. The buyer was at that time privileged to return them and receive back the purchase price which it had paid. However, instead of insisting upon its full rights, Alper elected, so to speak, to enter into a special kind of contract whereby the seller agreed to take back the goods, refinish them, and then submit a new sample for its purchaser's approval.

That the second sample was sent " for approval " was admitted by defendant Connor, as was plaintiff Alper's dissatisfaction with the sample and defendant's subsequent delivery of the remainder of the goods despite plaintiff's failure to give its approval. Where a sale is thus made subject to the buyer's satisfaction, his approval becomes a condition precedent to his obligation to accept the merchandise. (See, e. g., *Doll* v. *Noble,* 116 N. Y. 230; *Duplex Safety Boiler Co.* v. *Garden,* 101 N. Y. 387; *Atlas Shoe Co.* v. *Lewis,* 202 App. Div. 244, 248; see, also, 1 Williston on Sales [1948], §§ 191, 191a, pp. 483–488). While the power to withhold approval is an untrammelled one where the object of the contract is " to gratify taste, serve personal

convenience, or satisfy individual preference " (*Duplex Safety Boiler Co.* v. *Garden, supra,* 101 N. Y. 387, 390), a different rule ordinarily prevails, in this state, for commercial contracts where the suitability of the goods is a matter of " mechanical fitness, utility, or marketability " (3 Williston on Contracts [1936], p. 1946) ; in such a case, the contract is " construed as imposing upon the seller the requirement only that a reasonable man * * * be satisfied with the performance." (1 Williston on Sales, *op. cit.,* § 191, p. 485 ; see, also, *Duplex Safety Boiler Co.* v. *Garden, supra,* 101 N. Y. 387 ; *Hummel* v. *Stern,* 21 App. Div. 544, affd. 164 N. Y. 603 ; 1 Restatement, Contracts, § 265, p. 380.)

The contract before us in no way involves personal taste or preference, and, therefore, if the sample depicted goods suitable for the purpose of large-scale blouse manufacture, plaintiff was under the necessity of approving it. However, even if defendant established that the sample was satisfactory (cf. *Doll* v. *Noble, supra,* 116 N. Y. 230, 232–233; *Bowery Nat. Bank* v. *Mayor,* 63 N. Y. 336, 339) and, by that token, that plaintiff was not privileged to refuse approval, that does not dispose of this appeal. In a case of sale by sample, " There is an implied warranty that the bulk shall correspond with the sample in quality " (Personal Property Law, § 97), placing upon the seller the burden of demonstrating that the goods subsequently shipped actually matched the sample exhibited. (Cf., e. g., *Frankel* v. *Foreman & Clark,* 33 F. 2d 83, 86 [applying the law of New York] ; also, 1 Williston, *op. cit.,* § 255, p. 677.) Consequently, if the seller failed to prove that fact, he could not insist upon acceptance by the buyer. (See, e. g., *Henry & Co.* v. *Talcott,* 175 N. Y. 385, 390; see, also, 4 Williston on Contracts, *op. cit.,* § 1002, p. 2762.)

The record before us is searched in vain for any evidence that the bulk of the goods was similar to the sample. Indeed, the testimony of witnesses, including those called by defendant itself, indicates that it was not similar — that the piece representing the bulk had a stiffer finish, was less soft than the sample and more difficult to handle. At any rate, and quite apart from such testimony, it is clear that in the absence of proof that the goods shipped to plaintiff corresponded with the sample in quality, plaintiff was not obligated to accept them.

Since we are reversing and directing a new trial for the reason stated above, there is no need to discuss plaintiff's further contention that certain of the trial judge's remarks to the jurors, after they had announced their inability to agree, induced them to return with a hasty and ill-considered verdict. It is enough to say that, while the challenged statements were certainly not so designed or intended, they may unfortunately have had a coercive and propulsive effect.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CONWAY, Ch. J., DESMOND, DYE, FROESSEL, VAN VOORHIS and BURKE, JJ., concur.

Judgments reversed, etc.