Froessel, J.
There have been four trials of this action. On the third trial, the judgment entered upon a verdict for defendant was affirmed by the Appellate Division (284 App. Div. 954), but we reversed and ordered a new trial (309 N. Y. 67, motion for reargument denied 309 N. Y. 797). In the opinion in that case, we reviewed the basis and background of this litigation. The record on the fourth trial is now before us.
Plaintiff has been seeking to recover the purchase price paid to defendant for a quantity of nylon cloth to be used in the manufacture of blouses, and which plaintiff refused to accept because of its allegedly defective quality. Inasmuch as the evidence upon this trial is in effect substantially the same as on the previous trial, it will be unnecessary to review it here, as it was sufficiently set forth in our earlier opinion (309 N. Y. 67).
In determining the rights of the parties here, it should be noted at the outset that in our previous decision we were of the opinion that, although the sale initially was of goods for a particular purpose, it subsequently became a sale by sample. It was upon this theory that the present trial was conducted. The Trial Judge submitted to the jury three questions:
“ Question No. 1: ‘ Did the defendant, in the course of the conference of June 2 or June 3, agree to take back the goods, refinish them and then submit a new sample for plaintiff’s approval? ’
“Question No. 2: ‘If your answer to the first question is “ yes ” was the sample (Exhibit C) such that the plaintiff should have approved it? ’
“ Question No. 3: ‘ If your answer to the second question is “yes,” did the second shipment correspond with the sample in quality? ’ ”
All of these questions were answered by the jury in the affirmative, and a general verdict in favor of defendant was rendered. The trial court subsequently set aside this general verdict on the ground that the second sample was not “ refinished ” as agreed, and was justifiably rejected by plaintiff. It thereupon directed a verdict for plaintiff. Thus the trial court concluded that defendant breached the contract to *283 furnish a refinished sample, and any shipment of goods to plaintiff subsequently was at the risk of the seller.
The Appellate Division reversed this determination “ on the law ”, and reinstated the jury’s verdict. It held that there was sufficient evidence to support the jury’s finding “ that the sample was of such quality as the plaintiff should have approved within the meaning of the Court of Appeals decision ”, and that “ there was ample factual evidence that the bulk was of better quality and more suitable for the purpose intended than the sample ” (emphasis supplied), but nowhere does it say that the bulk corresponded to the sample.
While we clearly indicated on the previous appeal that the transaction between the parties eventually became a sale by sample, the Trial Judge resubmitted the question to the jury as one of fact. In answering the first submitted question in the affirmative, the jury found the following facts: that in the early June conference defendant agreed (1) “ to take back the goods”, (2) to “refinish them”, and (3) to “then submit a new sample for plaintiff’s approval” (emphasis supplied).
The answer to this question is dispositive of the entire case, for the evidence is indisputably clear that defendant never submitted a new sample of the refinished goods for plaintiff’s approval. The second sample, then, the only one with which we are here concerned, was not of the refinished goods as promised, and everyone, including defendant’s president, concedes that plaintiff never approved this sample. Despite the foregoing, Connor, instead of submitting the promised sample, or even coming to see plaintiff as he agreed after the so-called “sit tight” conversation, arbitrarily ordered his dyers to refinish the goods and ship them to plaintiff.
Having failed to keep its original agreement with respect to the first shipment, as a result of which a sale for a particular purpose was turned into a sale by sample, and having submitted a second sample which according to its own witnesses was not the same as the second shipment, and indeed having failed ever to submit a sample of the refinished goods sent under the second shipment, as the jury found it agreed to do, defendant has failed to keep its modified agreement, and therefore may not prevail.
The answers to the second and third questions are in no way dispositive of this case and may therefore be disregarded, for, assuming plaintiff should have approved the second sample, the *284 fact remains that the bulk of the goods as refinished and shipped did not correspond to that sample. The importance of this point was indicated in onr previous decision in which we said (309 N. Y. 67, 71, supra): “ even if defendant established that the sample was satisfactory * * * the seller [has] the burden of demonstrating that the goods subsequently shipped actually matched the sample exhibited ”.
It is not disputed that in a sale by sample the seller has the burden of showing that the bulk of the goods corresponds to the sample (Alper Blouse Co. v. Connor & Co., supra, p. 71; Rosenstein v. Casein Mfg. Co., 50 Misc. 345, 347; 1 Williston on Sales, § 255). What the defendant does argue is that the requisite correspondence is established by the evidence that the bulk is better suited to the manufacture of blouses than the sample, and this is also the position taken by the Appellate Division.
That this is not the proper test to determine whether there is correspondence is evident from the statement in our previous opinion (p. 71) that the bulk must “ actually match [ed] the sample ”. The cases dealing with such a sale clearly indicate that a buyer cannot be compelled to accept goods which do not correspond with the sample (Henry & Co. v. Talcott, 175 N. Y. 385, 390; Beirne & Burnside v. Dodd, 5 N. Y. 95, 98; Kupfer & Co. v. Pellman, 67 Misc. 149, 152; Hanhart v. Labe Importing Co., 4 Misc 2d 256; 1 Williston on Sales, § 251; 4 Williston on Contracts, § 1002). If they do not correspond, that ends the matter, and there should be no additional requirement on the buyer’s part to determine whether the bulk of the goods “ was of better quality and more suitable for the purpose intended than the sample ”. This is now a case under section 97 of the Personal Property Law — not one under section 96.
The record in this case uncontrovertedly shows that the bulk of the goods was stiffer than the sample, and that it was refinished while the sample was not. This resulted in a difference emphasized by one of defendant’s witnesses. When asked whether such difference was “very evident”, he replied: “Oh, definitely; you couldn’t mistake it for anything in the world ”. The record now before us is the same in this respect as that of the previous trial, about which we said (309 N. Y. 67, 71): “ The record before us is searched in vain for any evidence that the bulk of the goods was similar to the sample.”
*285 We need not require a criterion of absolute identity of sample and bulk in order to find that there is not the requisite correspondence here. The difference was conceded by everyone, and was easily perceptible. It was a difference dealing with the very subject of dispute between plaintiff and defendant, and whether the chemical treatment to stiffen the bulk of the goods made them better for their intended use is not relevant.
Accordingly, the judgment of the Appellate Division should be reversed, and that of Trial Term reinstated, with costs in this court and in the Appellate Division.
Conway, Ch. J., Desmond, Dye, Fuld, Van Voorhis and Burke, JJ., concur.
Judgment reversed, etc.