MISANO di NAVIGAZIONE, SpA, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 1610, Docket 92–6008.

United States Court of Appeals, Second Circuit.

Argued May 26, 1992.

Decided June 30, 1992.

Robert G. Shaw, Healy & Baillie, New York City (William N. France, Kevin P. Walters, of counsel), for plaintiff-appellant.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Mark E. Schaeffer, Asst. U.S. Atty., New York City, Janis G. Schulmeisters, U.S. Dept. of Justice, of counsel), for defendant-appellee.

Before MINER and WALKER, Circuit Judges, and KELLEHER, Senior District Judge.*

* Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

KELLEHER, Senior District Judge:

The appellant, Misano di Navigazione S.p.A., ("Contractor") brought an action in the District Court for the Southern District of New York, invoking its maritime jurisdiction under 28 U.S.C. § 1333(1). Contractor sought judicial review of the final decision of a Military Sealift Command (the "Government") contracting officer, who denied Contractor's claim for wrongful cancellation of MSC Voyage Charter Contract N0003388C1425, dated January 6, 1978 ("the Charter").

Pursuant to the Contract Disputes Act of 1987, 41 U.S.C. § 603 (1987), and Suits in Admiralty Act, 46 U.S.C.App. § 741 et seq. (Appendix 1992), a party to a maritime contract with the Government may seek in district court a trial de novo regarding a contracting officer's decision.

After trial by the court, judgment was entered on November 12, 1991, in favor of the Government. The district court held that the parties' Charter authorized the Government to cancel the Charter upon rejection by its inspector of the ship's tanks as unclean. The court held that the rejection need meet only a standard of good faith and found that the standard was met. Contractor filed its notice of appeal on December 30, 1991. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1992). We affirm.

## BACKGROUND

On January 8, 1988, the Government chartered the MT *Mare del Nord* ("the Vessel") from Contractor to carry approximately 13,000 tons of "Navy Special Fuel Oil" from Rosyth, Scotland to Guantanamo, Cuba. Navy Special Fuel Oil has particular qualities distinguishing it from regular commercial oil. The Charter was on a standard contract form drafted and used by the Government.

On January 12, the Government's surveyor, Master/Sergeant Robert Young (the "Inspector"), boarded the Vessel to inspect her tanks. The Inspector discovered a substance similar to "heavy, thick apple butter" within the Vessel's manifold and tanks. Fearing that the residue on the tanks would be incompatible with Navy Special Fuel Oil, the Inspector rejected the tanks as "unclean."

The Inspector allowed the Vessel's officers another opportunity to clean the tanks. The Vessel's owners terminated the cleaning, however, in order to vacate the Vessel's berth as scheduled. Upon the Inspector's findings, the Government cancelled the Charter. The Government cited Article 26 of the Charter as vesting the Inspector with final authority to terminate the parties' Charter.

Contractor claimed in the court below that within the Charter was the assumption that the Inspector's decision was subject to an objective standard of reasonableness. Contractor contends that at trial the evidence established that the residue remaining in the Vessel's tanks was so insignificant relative to the size of the tanks and cargo that no reasonable commercial surveyor would have rejected the Vessel's tanks.

Contractor now asserts that the district court erred in holding that the Inspector's rejection of the Vessel's tanks was subject only to a good faith standard of satisfaction. Instead, Contractor claims that the Charter implicitly subjected the Inspector's decision to an objective, reasonable standard.

## DISCUSSION

### I. OBJECTIVE VERSUS SUBJECTIVE STANDARD

When a contract conditions performance upon the satisfaction of one party and is ambiguous as to the applicable standard of satisfaction, courts generally require performance to the satisfaction of a reasonable man, particularly when a definite objective test of satisfaction is available. Restatement (Second) of Contracts § 228 (1981)[1]; see also 5 Williston On Contracts

---

**1.** Both parties have cited the Restatement (Second) of Contracts as the law governing this dispute. The district court relied upon the Restatement in its opinion. This Court similarly

§ 675B at 210–218 (3d ed. 1961). Under either a subjective or objective interpretation, the exercise of judgment must be in accordance with the duty of good faith and fair dealing or the agreement is illusory. Restatement (Second) of Contracts § 228 cmt. a (1981).

The district court declined to adopt the general standard of reasonableness in the instant case, finding that the Charter clearly conveyed the parties' intent to leave the contract executory until the Inspector had rendered his opinion. We find that the determination of the contract's applicable standard involves a question of law. As such, we will address that question under a *de novo* standard of review.

Courts have observed that satisfaction clauses should fall into two categories of review: (1) those that call for satisfaction as to "commercial value or quality, operative fitness, or mechanical utility," which are interpreted under a reasonableness standard, and (2) those that require the consideration of a "multiplicity of factors" and involve "fancy, taste, or judgment," which should be analyzed under a good faith standard. *See Action Engineering v. Martin Marietta Aluminum,* 670 F.2d 456, 461 (3d Cir.1982) (quoting *Mattei v. Hopper,* 51 Cal.2d 119, 330 P.2d 625, 626–27 (1958) (en banc)); *cf. Morin Bldg. Products Co., Inc. v. Baystone Construction,* 717 F.2d 413, 414–15 (7th Cir.1983). The latter category often characterizes government contracts "in which the determination of a vital issue under the contract is left to the decision of a government officer." *Goltra v. Weeks,* 271 U.S. 536, 548, 46 S.Ct. 613, 617, 70 L.Ed. 1074 (1926).

## II. TERMS OF THE PARTIES' CONTRACT

■ Since the ultimate touchstone of the Court's decision is the intent of the parties to the contract, the Court must examine the actual language utilized. The parties' "manifest purpose ... controls the interpretation of the contract provisions." *Rock Transport Properties Corp. v. Hart-*

*ford Fire Ins. Co.,* 433 F.2d 152, 154 (2d Cir.1970).

The operative language in the present case is contained within Article 26(a) of the parties' Charter. It provides:

Prior to the Vessel entering upon this Charter, the cargo tanks, pipelines, and pumps of the Vessel shall be *subject to approval by the Charterer's Inspector* for the carriage of the designated cargo. Should the cargo tanks, pipelines, or pumps of the Vessel be rejected by the Charterer's inspector at the first loading port, as unacceptable for the carriage of the designated cargo, the Charterer shall have the option to require the necessary cleaning by the Owner or to cancel this Charter *without any liability whatsoever in the Charterer.* If the Charterer exercises its option to require additional cleaning by the Owner, the Charterer may also require the Owner to provide the Charterer's Inspector with a certificate of inspection from an independent inspector at Owner's expense prior to representing the vessel for loading. *The vessel will always be subject to the final approval of the Charterer's Inspector.* (Emphasis added.)

While § 228 of the Restatement cautions against the imposition of the subjective standard, it does so only when an *ambiguous* contractual provision is at issue. Indeed, Comment a to § 228 indicates that if the parties clearly intended to leave a decision subject only to the requirement of good faith, then the courts should not imply an additional requirement of reasonableness. *See* Restatement (Second) of Contracts § 228 cmt. a (1981).

After examining the terms of the parties' Charter, the Court is in accord with the district court's determination that the parties intended to impose upon the Inspector's decision only a good faith standard of satisfaction. The frequency with which the Charter states that the final decision remains with the Inspector, the clause alleviating the Government of liability upon cancellation, and the final sentence's reiteration of the Inspector's authority sup-

will use the principles of the Restatement in deciding this case.

ports the district court's interpretation of the Charter. Indeed, the most convincing aspect of Article 26 is the language affording the Government the option to cancel the Charter "without any liability whatsoever" upon the Inspector's rejection of the tanks. This provision leaves no room to impose a reasonable standard of satisfaction.

The fact that the Charter held the Inspector's decision to a good faith standard of satisfaction does not subject Contractor to the capricious whims of the Government. Instead, the Inspector's satisfaction must be honest and within the circumstances of the contract. *See* Restatement (Second) of Contracts § 228 cmt. a (1981).

▮ In the instant case, the district court found that the Inspector's fear that the residue in the tanks was incompatible with the cargo oil was "credible" and that his determination to reject the vessel was made in "good faith." Findings of a trial court are reviewed by the clearly erroneous standard. Rule 52, Federal Rules of Civil Procedure.

The record supports the district court's findings. Before boarding the Vessel, the Government telexed Contractor on January 11, 1988, that its Inspector would climb into the tanks to inspect them and that the tanks were to be "clean and gas free [2] upon arrival." Contractor acknowledged receipt of the telex. While it is standard practice to "clean" the tanks when preparing for carrying fuel oil, "gas freeing" the tanks and climbing into the tanks are not.

When the Inspector requested documentation of the Vessel's prior cargo in order to assess the condition of the tanks, the Vessel's officers told him that such documentation was not available but that the prior cargo had been fuel oil. When he found a greasy, buttery substance in the tanks, however, the Inspector suspected that the substance was not consistent with the officers' representation.

The Inspector's later inspection that day also revealed water and a wax "heel" in tanks No. 1 and 2. The Inspector informed

the Vessel's officers that if this was removed, the tanks would be acceptable. These residues, however, were not removed before the vessel sailed. The Inspector thus found that the presence of unknown and unidentified residue presented an unacceptable risk of contamination to the cargo of Navy Special Fuel Oil.

Contractor sent its own surveyors to examine the tanks. Mr. Alan Cobby, a surveyor hired by the Contractor's insurers, reviewed the tanks on January 12, 1988. He found residues of approximately an inch deep in each of the tanks he inspected. Contractor's representative, Mr. Timothy Gunner, reviewed the tanks on January 13, 1988, and found waxy residues floating on top of the water in the tanks. When he exited from one tank, he was "absolutely covered with this grease." Despite these findings, both Contractor's experts deemed the tanks ready for transport. The record reveals that neither of these witnesses was aware of the specifications for Navy Special Fuel Oil in January of 1988.

The foregoing supports the district court's finding of good faith; indeed, the Inspector's rejection seems reasonable in light of the Government's telex and the particular qualities of the Navy Special Fuel Oil. Accordingly, the findings below are not clearly erroneous.

### III. AVAILABILITY OF AN OBJECTIVE STANDARD

▮ Contractor points out that courts impose a reasonable standard of satisfaction when it is practicable to do so. *See* Restatement (Second) of Contracts § 228 cmt. b (1981). Contractor asserts that the standard of cleanliness for tanks carrying oil is readily defined by industry guidelines, and under the foregoing principle, Article 26 should be interpreted as requiring a reasonable standard of satisfaction.

At first glance, the determination of a tank's readiness to transport oil seems a subject properly defined by a reasonable and objective standard. The determination does not involve a judgment of aesthetics

---

**2.** "Gas free" is the absence of poisonous or explosive gases within the tank.

or personal fancy and addresses products of a commercial nature. The Inspector's decision, however, was dependent upon a number of particulars and more importantly, satisfaction that the tanks were suitable to carry the special fuel involved.

At issue was the transportation of a $2–3 million shipment of "special oil," easily contaminated and rendered useless, not to mention hazardous. The Government drafted the Charter to protect its safety, monetary and perhaps environmental interests. In essence, the terms of the Charter provided the Government with the entitlement to subjective assurance that the cargo was transported under its own special needs and conditions. Their intention to do so clearly is apparent from the language of the Charter. We thus reject Contractor's argument.

## IV. SATISFACTION OF A PROFESSIONAL

■ Comment b to § 228 of the Restatement (Second) of Contracts provides an interesting exception to the courts' general preference for an objective standard and further supports the lower court's holding. Comment b suggests that when the parties agree that *satisfaction depends upon the decision of a surveyor or engineer, even if employed by the obligor,* courts will not rush to apply the objective standard. The courts tend to assume that the third-party professionals, even if hired by the obligor, are capable of independent judgment, free from the selfish interest of the obligor. There is nothing in the record to suggest absence of independent judgment here.

Contractor contends that the Inspector is not a professional surveyor but an Army Sergeant who is employed full-time by the Government. The Government counters that the operative question is whether such person is "capable of independent judgment, free from the selfish interests of the obligor." *See* Restatement (Second) of Contracts § 228 cmt. b (1981).

Under this exception, a court should examine whether the professional is capable and did indeed exercise independent judgment. Addressing a similar situation, the U.S. Supreme Court found that a government engineer is a "professional expert," as he is not the real party in interest and "is really acting only as an agent for the government." *Goltra*, 271 U.S. at 548, 46 S.Ct. at 617.

The district court found that the Inspector, although employed by the government, was a professional capable of independent judgment. The record supports this finding.

## V. INTERESTS OF JUSTICE

■ Courts sometimes impose a reasonable standard to avoid a miscarriage of justice, a contingency unseen, or a party's forfeiture, especially when the obligor will be left with a benefit he cannot return. *See Morin,* 717 F.2d at 415; *see also* Restatement (Second) of Contracts § 228 cmt. b (1981).

In the instant case, the Government was not left with a benefit it could not return. Upon initial rejection of Contractor's tanks, the Government provided Contractor with another opportunity to clean the tanks. Contractor then terminated the cleaning for reasons of its own convenience. The Government was thus forced to find another transporter of the special fuel. The record does not show that the Government received any benefit from the change of vessels.

Contractor essentially seeks reversal here on the ground that the interests of justice will be better served by the finding of an objective standard. It cites the frequency with which the Government enters into such contracts with its "standard" terms and the Government's overall greater bargaining power.

Contractor's argument might be valid if a party was not forewarned of the Government's strict standards. In the instant case, however, Contractor knew special fuel was at issue and that the contract, by its express terms, afforded the Navy the right to set the high standard of subjective satisfaction, albeit in good faith. In addition, the Government issued a telex directing Contractor to "gas free" its tanks. In-

stead, the Inspector found tanks that may have been "washed" or "cleansed" but not "gas free." Moreover, the Inspector afforded Contractor another opportunity to clean the tanks.

It is not for us to set the policy of the Navy in negotiating contracts for purchase of goods and services required by its ships. There is no compulsion of law that limits the high standards required by the Navy in its contract negotiations. We decline to create any.

## CONCLUSION

Accordingly, the judgment of the district court is AFFIRMED.