ROHN INDUSTRIES, INC., Rohn, Construction, Inc., Rohn Products, Inc., Rohn De Mexico, S.A. De C.V., Rohn, Inc., and Rohn Installation Services, Inc., Plaintiffs Below Appellants,

v.

PLATINUM EQUITY LLC and Pfrank LLC, Defendants Below Appellees.

No. 591, 2005.

Supreme Court of Delaware.

Submitted: Aug. 29, 2006.
Decided: Oct. 20, 2006.

Daniel V. Folt, John H. Newcomer, and Matt Neiderman, Duane Morris, L.L.P., Wilmington, DE; John J. Soroko (argued), admitted pro hac vice for appellants.

Peter J. Walsh, Jr. and Sarah E. DiLuzio, Potter Anderson & Corroon, L.L.P., Wilmington, DE; Kevin S. Reed (argued), admitted pro hac vice for appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the court en banc.

STEELE, Chief Justice.

Platinum Equity LLC ("Platinum") scheduled to acquire certain of Rohn Industries, Inc.'s ("Rohn") assets before the end of 2002, terminated an Asset Purchase Agreement with Rohn under a provision that allowed for termination if Platinum determined in good faith that there was a reasonable basis in law and in fact to conclude that Platinum could reasonably be anticipated to incur any material asbestos related liability after consummating the acquisition. The parties agree that New York law governs their dispute over the contract language. The trial judge determined that Platinum had no objective basis in law or in fact to terminate the agreement. The trial court held, nevertheless, that Platinum had properly terminated the Agreement because it objectively believed in good faith that it would incur a material asbestos-related liability after consummating the acquisition. Rohn now appeals, contending that the trial judge erred by failing to recognize that under New York law, in these circumstances, judicial review must also include review for objective reasonableness. We agree and affirm in part, reverse in part and remand with instructions to enter judgment for Rohn.

### FACTS AND PROCEDURAL HISTORY

On November 27, 2002, plaintiff-appellant Rohn and defendant-appellee Platinum entered into an Asset Purchase Agreement under which Platinum would acquire certain of Rohn's assets related to the manufacture of cell phone towers.

Platinum buys and sells companies and is accustomed to completing purchases under expedited conditions. For this reason, when Rohn advertised that its assets were for sale and stated its desire to consummate the sale by the end of 2002, Platinum was one of two companies that came forward as a viable purchaser.

When Platinum began its due diligence, it learned that Rohn previously had been a division of UNR Industries, a successor to Unarco Industries, Inc., which, before 1970, made products with asbestos. Platinum also learned that, in 1982, as a result of asbestos liabilities, UNR had filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Although the liabilities relating to asbestos had been channeled to a trust and Rohn had since separated from UNR, and Rohn had never manufactured products with asbestos, Platinum requested that a termination clause be added to the Agreement. The termination provision allowed Platinum to terminate the Agreement:

> if [Platinum] determines in good faith that there is a reasonable basis in law and in fact to conclude that ... as a result of the consummation of the [Rohn transaction, Platinum] could reasonably be anticipated to have any ... material liability for any asbestos-related claim....

This termination provision enabled the parties to progress toward an end of the year closing, which, for Rohn to achieve $21 million in tax refunds, was vital to Rohn, yet also permitted Platinum to continue conducting due diligence with regard to asbestos related liabilities.

After consulting with independent expert legal counsel, Platinum concluded that the transaction would expose Platinum to material asbestos related liability, and, cit-ing the termination provision, purported to terminate the Agreement on December 26, 2002. Rohn could not find another purchaser before the end of 2002, and lost millions in tax refunds as a result.

Rohn filed this action on April 14, 2003, seeking damages for breach of contract based upon Platinum's allegedly wrongful termination of the parties' Asset Purchase Agreement.

A Superior Court judge tried the case without a jury from December 13 to 21, 2004, heard testimony from 13 witnesses and admitted more than 250 exhibits. Rohn sought to establish liability by showing that Platinum's concern about asbestos liability, which prompted Platinum to terminate the Agreement, was not objectively reasonable, and that New York law, which governed the Agreement, dictated that an objective, as well as subjective, standard be employed to determine whether Platinum had properly terminated the Agreement. Platinum defended on the ground that it was entitled to invoke the termination provision as long as it determined in good faith that there were reasonable grounds to fear material asbestos related liability—irrespective of whether or not its determination was objectively reasonable. In the alternative, Platinum sought to establish that its determination was, in fact, objectively reasonable.

Rohn appealed on November 28, from the Superior Court's November 22, 2005, Opinion and Order[1] that granted judgment to Platinum on all of Rohn's claims. The trial judge found that the plain language of the Provision "confer[red] discretion on Platinum to terminate the agreement so long as it behaved in good faith." Notably, however, the trial judge also held that Platinum's decision to terminate was objectively unreasonable.

---

1. *Rohn Indus., Inc. v. Platinum Equity, LLC,* 887 A.2d 983 (Del.Super.2005).

After hearing the parties argue on June 21, 2006, we asked the parties to address, in supplemental memoranda, exactly what under New York law, the parties meant by the Agreement language: "material liability for any asbestos-related claim." The parties filed supplemental memorandums on this issue.

## DISCUSSION

The primary issue on appeal is whether the trial judge limited her review to only a good faith analysis of Platinum's decision to terminate and whether she properly did so. The trial judge found no legal theory under which Platinum, in buying non-asbestos assets for value in a non-merger, could have inherited asbestos related liability; indeed, the trial judge determined that UNR's (Rohn's predecessor) asbestos liability was permanently discharged and enjoined so no liability would pass to Platinum. But the trial judge applied a purely subjective standard in holding that Platinum, in good faith, believed that it would incur material asbestos related liability from the transaction and that, therefore, Platinum had properly terminated the Agreement on that basis alone.

On appeal, Rohn argues that the trial judge legally erred by applying a strictly subjective standard. Rohn contends that, under New York law, the termination provision prescribes an objective standard un- der which a court can review for reasonableness, and that the trial judge herself found that Platinum's belief that it could "reasonably be anticipated to have ... material liability for any asbestos-related claim ..." was manifestly unreasonable.[2] In response, Platinum argues that the trial judge correctly held that Platinum's decision to terminate is only properly reviewed as a "good faith" subjective belief. In the alternative, Platinum argues that it had a reasonable basis in law and in fact to conclude (objectively) that it could reasonably anticipate incurring material asbestos related liability if it acquired Rohn's assets.

▬▬ We review both the trial judge's interpretation of the Agreement's language[3] and her legal conclusions de novo.[4] We review the trial judge's factual findings for clear error alone.[5]

▬▬ Contrary to the trial judge's determination, New York law follows the Restatement (Second) of Contracts (1981) in applying provisions akin to the termination clause at issue. Section 228 provides an objective standard, namely that:

When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance or with respect to something else, and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is

2. Rohn also argues that, even under only a subjective standard, Rohn should have prevailed in the Superior Court. For reasons discussed below, we need not address Rohn's alternative argument.

3. *Emmons v. Hartford Underwriters Ins. Co.,* 697 A.2d 742, 745 (Del.1997) ("Under Delaware law, the interpretation of contract language is treated as a question of law.").

4. *Sonitrol Holding Co. v. Marceau Invs.,* 607 A.2d 1177, 1181 (Del.1992); *J.D. Cousins & Sons, Inc. v. Hartford Steam Boiler Inspection*

*& Ins. Co.,* 341 F.3d 149, 153 (2d Cir.2003) ("Whether the standard for contract performance is objective or subjective is a matter of intent and except in the case of an ambiguity is usually determined as a matter of law."); *Kahn v. Lynch Commc'ns Sys., Inc.,* 669 A.2d 79, 84 (Del.1995) ("Our review of the formulation and application of legal principles ... is plenary and requires no deference.").

5. *Scharf v. Edgcomb Corp.,* 864 A.2d 909, 916 (Del.2004).

preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied.[6]

■ As Judge Posner explained in *Morin Bldg. Prods. Co. v. Baystone Constr., Inc.*,[7] this rule of construction embodies the "presumption that the performing party would not have wanted to put himself at the mercy of the paying party's whim."[8]

■ Section 228 reflects longstanding New York law.[9] As the New York Court of Appeals held in *Alper Blouse Co. v. E.E. Connor & Co.:*[10]

> While the power to withhold approval is an untrammeled one where the object of the contract is "to gratify taste, serve personal convenience, or satisfy individual preference," a different rule ordinarily prevails, in this state, for commercial contracts where the suitability of the goods is a matter of "mechanical fitness, utility, or marketability"; in such a case, the contract is "construed as imposing upon the seller the requirement only

that a reasonable man ... be satisfied with the performance."[11]

This rule dates back to the 19th Century: "That which the law shall say a contracting party ought, in reason to be satisfied with, that the law will say he is satisfied with."[12]

*Alper Blouse* and Section 228 remain New York law. For example, in *J.D. Cousins & Sons*,[13] the Second Circuit, in a diversity case applying New York law, heard an appeal from a case for breach of a contract to perform boiler inspection services. The contract contained a clause that permitted the inspector to make inspections as "he may deem necessary to permit him to certify to the best of his belief" that the boilers complied with applicable codes.[14] Like the trial judge here, the District Court held that words such as "as he may deem necessary" and "to the best of his belief" made this a subjective discretionary determination that the court could not review save for good faith.[15] The Second Circuit disagreed. Citing to *Alper Blouse*, it ruled that under New York law:

---

**6.** RESTATEMENT (SECOND) OF CONTRACTS § 228 (1981).

**7.** 717 F.2d 413 (7th Cir.1983).

**8.** *Id.* at 415. *See also* 13 WILLISTON ON CONTRACTS § 38:24 (4th ed. 2000) (discussing application of objective standards). Indeed, as Rohn asserts, Rohn would not have agreed to the clause had it believed only a subjective good faith determination would justify termination. To agree to such a provision "would be absurd ... because Rohn had to close a transaction by December 31st ... Rohn would not have agreed to a provision that would give the other side the sole discretion to walk away from it at the eleventh and a half hour...." (Trial Tr., 105, Afternoon Dec. 13, 2004.)

**9.** *See e.g., Rus, Inc. v. Bay Indus.,* 322 F.Supp.2d 302, 310 (S.D.N.Y.2003) (citing § 228 for New York law mandating objective standards), *aff'd,* 128 Fed.Appx. 798, 2005

WL 807010, 2005 U.S.App. Lexis 5844 (2d Cir. Apr. 7, 2005).

**10.** 309 N.Y. 67, 127 N.E.2d 813 (1955).

**11.** *Id.* at 815 (citations omitted).

**12.** *Brooklyn v. Brooklyn C. R. Co.,* 47 N.Y. 475, 479 (1872).

**13.** *J.D. Cousins & Sons, Inc.,* 341 F.3d at 153.

**14.** *Id.* at 151.

**15.** *Id.* at 153 ("Judge Skretny concluded that the contract between Cousins and Hartford came within that very limited class of cases in New York where the promisee's satisfaction with performance ... is subjective rather than objective. Expressed differently, if the standard is objective, a decision to reject the test performance must be reasonable, while if the subjective standard applies, it need only be shown to be honest and in good faith.").

[T]he objective standard was intended to apply in this case. Whether a vessel complies with the applicable ASME standard and is safe are clearly both external and objective facts, similar to issues of merchantability, operative fitness or mechanical utility, which are typically adjudicated under the standard of objective reasonableness.[16]

Similarly, in *Rus, Inc. v. Bay Indus., Inc.*,[17] the U.S. District Court for the Southern District of New York held that, when a contract conditions one party's reasonable performance on that party's satisfaction, courts impose a duty of good faith and fair dealing that requires the terminating party to exercise its discretion as would a reasonable person.[18] In *Rus*, the agreement at issue specified various conditions that one party had to fulfill before the other party's obligation to consummate the contract arose. Among those obligations was the seller's duty to deliver the result of an environmental assessment and audit of the facilities it was selling. The provision at issue conditioned the buyer's performance on the buyer's reasonable satisfaction with the report.[19] The court held that whether the buyer's dissatisfaction with the report was unreasonable depended upon whether "a reasonably prudent buyer would have been sufficiently satisfied with the report to proceed with the transaction."[20] The court further ruled that "to determine whether [the buyer's] dissatisfaction was reasonable, therefore, the factfinder will have to ascertain the severity of the problems disclosed and consider them in light of the transaction as a whole."[21]

Platinum argues that the foregoing authorities are inapposite because the rule that satisfaction be measured against a reasonableness standard is a default rule that applies only when the parties have not agreed to the contrary. Here, Platinum argues, the parties agreed to the contrary by drafting the termination Provision to read "if [Platinum] determines in good faith ..." To support its contention, however, Platinum relies on case law that actually supports Rohn's position.

In *Morin Bldgs. Prods. Co. v. Baystone Constr., Inc.*,[22] Judge Posner, recognizing that the requirement of reasonableness may be overcome if the parties expressly contract for a purely subjective standard, opined that "the presumption that the performing party would not have wanted to put himself at the mercy of the paying party's whim is overcome when the nature of the performance contracted for is such that there are *no objective standards* to guide the court."[23]

---

**16.** *Id.; see also Royal Bank of Canada v. Beneficial Fin. Leasing Corp.*, 1992 WL 167339, at *6, 1992 U.S. Dist. Lexis 9496, at *17 (S.D.N.Y. June 30, 1992) ("[W]here the nature of the performance is functional and does not cater to individual taste, the promisor's dissatisfaction must be objectively reasonable.").

**17.** 322 F.Supp.2d 302 (S.D.N.Y.2003).

**18.** *Id.* at 310.

**19.** Section 7.1(f) of the *Rus* Agreement provided that "Seller shall have delivered to Buyer the results of a Phase I environmental assessment and environmental compliance audit for each of [Soundcoat's] facilities ...

and Buyer shall be reasonably satisfied therewith." *Id.*

**20.** *Id.*

**21.** *Id.*

**22.** 717 F.2d 413, 415 (7th Cir.1983).

**23.** *Id.* (emphasis added). Platinum also cites *Misano di Navigazione, S.p.A. v. United States*, 968 F.2d 273, 275 (2d Cir.1992). *Misano* is distinguishable. *Misano* involved a *navy* charter that frequently repeated that the final decision remained with an inspector, emphasized the inspector's authority, contained a clause alleviating the government of liability

■ Thus, the key question in this case, as derived from Section 288 and New York case law, is whether it is possible to determine objectively whether a reasonable person in Platinum's position would have been satisfied by the protections against asbestos related liability, as distinguished from whether Platinum itself in good faith concluded the protections were unsatisfactory. The trial court's determination that there was no basis in law or fact for terminating the Agreement [24] demonstrates self-evidently that this question is, in fact, answerable. Here, there were objective standards to guide the trial judge, and based on those standards, she concluded that Platinum acted unreasonably.

Because there are objective standards to guide the court's assessment of the reasonableness of Platinum's termination, we hold that the trial judge erred in applying a subjective good faith analysis to determine that Platinum properly terminated the agreement. We find that New York law demands that the termination of a contract in reliance upon a satisfaction clause be objectively reasonable where there are, as here, objective standards to guide the court. Because the record fully supports the trial judge's conclusion that there were no objective bases in law or fact for terminating the Agreement, we affirm that holding.

### CONCLUSION

New York law demands that court review of the termination of a contract in reliance upon a satisfaction clause be objectively reasonable where there are objective standards to guide the court. We find that the record fully supports the trial

judge's holding that there were no objective bases in law or fact for terminating the Agreement. We, therefore, AFFIRM that holding. The trial judge, however, applied only a good faith subjective standard in determining that Platinum *properly* terminated the Agreement. We therefore must REVERSE the judgment and REMAND the case to the Superior Court to enter judgment in favor of the plaintiff-below-appellant. Jurisdiction is not retained.

upon cancellation—a provision that the court held left no room to impose a reasonable standard of satisfaction. *Id.* at 275–76. Moreover, the court below found that the inspector's fear that the residue in the tanks

was incompatible with the special cargo oil was "credible." *Id.* at 276.

**24.** *Rohn Indus., Inc. v. Platinum Equity, LLC,* 887 A.2d 983, 990–97 (Del.Super.2005).